UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW R. PERRONG )<br>1657 The Fairway #131 Jenkintown, PA 19046 )<br>)<br>)<br>Plaintiff, )<br>vs. )<br>)<br>SECURE AUTOMOTIVE SOLUTIONS INC. )<br>d/b/a "National Coverage Center" )<br>3843 S BRISTOL St. #478 )<br>SANTA ANA, CA 92704, )<br>)<br>JARED JOHN JULIAN III, )<br>Individually and as Principal of NCC, )<br>180 PARKCREST, )<br>NEWPORT COAST, CA 92657, )<br>)<br>BENJAMIN MARK GRIFFIN )<br>Individually and as Principal of NCC )<br>1940 E 16TH ST APT O311, )<br>NEWPORT BEACH, CA 92663, )<br>)<br>and )<br>DOES 1 through 100, inclusive, )<br>)<br>Defendants. )<br>) | Civil Action<br>No._____<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Jury Trial Demanded |

Plaintiff ANDREW R. PERRONG brings this action for damages, restitution, reinstatement, statutory damages, punitive damages, sanctions, interest, court costs, and injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing tortious activity of SECURE AUTOMOTIVE SOLUTIONS INC, ("NCC") d/b/a "National Coverage Center", JARED JOHN JULIAN III, and BENJAMIN MARK GRIFFIN, Individually and as Principals of NCC ("JULIAN," and "GRIFFIN"), and Does 1 through 100, inclusive, in negligently and/or willfully

1

contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls"), by utilization of an automatic telephone dialing system, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.     Introduction

1. Defendant SECURE AUTOMOTIVE SOLUTIONS INC ("NCC") is a company located and domestically incorporated in the State of California. NCC does business under the name "National Coverage Center," and is registered as such fictitious name in Orange County, CA. NCC markets, and sells, *inter alia,* vehicle service plans to individuals throughout Pennsylvania and other states in the US. Its principal mailing address and address for service of process is located at 3843 S Bristol St. #478 SANTA ANA, CA 92704.

2. Plaintiff brings this action to challenge Company's practices in the telephone solicitation of their products and services. Specifically, Plaintiff challenges Company's and Company's agents' illegal telephone solicitations by which they markets their products and services, illegal Calls made using an automatic telephone dialing system and robocalls, and failure to maintain a Do-Not-Call policy or list in connection therewith.

3. All of the claims asserted herein arise out of Company's illegal telephone solicitation campaign and are a common fact pattern.

## Jurisdiction and Venue

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), in that

Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County, which lies within this judicial district, pursuant to 28 U.S.C. §118. Plaintiff received the phone calls to a 215-area code number, registered in this judicial district, and Plaintiff received the calls from a spoofed caller ID number with a 215-area code. Each of the Defendants has sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent… ; it occurred when the [facsimile] was received."

## II.     Parties

6. Plaintiff ANDREW PERRONG ("Plaintiff") is an individual who received the alleged phone calls on his private domicile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who may be mailed at 1657 The Fairway #131 Jenkintown, PA 19046.

7. Defendant SECURE AUTOMOTIVE SOLUTIONS INC ("NCC") is a company located and domestically incorporated in the State of California. NCC does business under the name "National Coverage Center," and is registered as such fictitious name in Orange County, CA. NCC markets, and sells, *inter alia,* vehicle service plans to individuals throughout Pennsylvania and other states in the US. Its principal mailing address and address for service of process is located at 3843 S Bristol St. #478 SANTA ANA, CA 92704.

7. Defendant JARED JOHN JULIAN III ("JULIAN") is an adult individual who is the

3

Primary Owner of NCC. JULIAN is an adult individual, and citizen of the United States. As Principal of NCC, JULIAN is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Company's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in California, Pennsylvania, and nationwide.

8. Defendant BENJAMIN MARK GRIFFIN ("GRIFFIN") is an adult individual who is another Managing Member / Principal of NCC. As Principal of NCC, GRIFFIN is an individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Company's name GRIFFIN is an adult individual, and citizen of the United States. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in California, Pennsylvania, and nationwide.

9. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 1 through 100, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

10. At all times herein mentioned, NCC, JULIAN, GRIFFIN, and the Doe Defendants, (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

11. Defendants, and each of them, aided and abetted, encouraged and rendered substantial

4

assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

12. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

13. The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.

14. Under the TCPA, an individual such as JULIAN or GRIFFIN may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217, the Communications Act of 1934, as amended, of which the TCPA is a part, which reads, *inter alia*: "[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

15. When considering individual officer liability, other Courts have agreed that a Corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See*, e.g*., Jackson v. Five Star Catering, Inc., v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013), which stated that "[M]any courts have held that corporate actors

can be individually liable for violating the TCPA where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *See also Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011), stating that "If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."

16.  Defendants JULIAN and GRIFFIN are personally liable under the "participation theory" of liability because are the Principal owners and controlling officers of NCC, knew of Company's violations, and directed employees and/or agents of Company to continue making those violations. Furthermore, JULIAN and GRIFFIN are personally liable because they are personally responsible for ensuring Company's employees' TCPA compliance.

### III.   Factual Allegations

17. In or about July 9th , 2018, Plaintiff received the first of multiple calls made using an automatic telephone dialing system ("ATDS") or robocall by Defendants and/or their agents at Plaintiff's personal domicile telephone number, 215-947-1920, for which he is charged for the call under a package calling arrangement. Plaintiff had not consented to this solicitation, and Plaintiff's telephone number was on the Federal Do-Not-Call Registry.

18. This first call, received at 11:22 AM, bore the "spoofed" Caller ID 215-877-5217, and was answered by Plaintiff. Plaintiff answered the call and said hello multiple times before he heard a "balloon pop" sound, characteristic of the ViciDial Asterisk-based ATDS, and was connected to what sounded like an offshore call center.

19. This call was sent using "spoofed" caller ID information that, when called back, results in the call not going anywhere. Defendants transmit false caller ID information in order to conceal Company's identity and illegal actions.

20. The agent at the offshore call center said he was calling with the generic named "Vehicle Protection Network." After confirming some basic information such as make and model, the agent transferred the call to his offshore supervisor, and then transferred the call to a (presumably CA-based) agent of defendant NCC named "Adarius." The offshore agent then disconnected from the call, which is marked by a zipper sound in the ViciDial ATDS.

21. Because "Adarius" was being evasive with the true name of his company and claimed to be calling from Hyundai's dealer warranty program, when in fact he was not, Plaintiff knew that it would not be easy, or potentially impossible, to identify the caller without placing an order. Accordingly, Plaintiff placed an order for a 5 year, 101,000 mile service plan, for $3,255.00, made in 18 monthly payments of $170 plus a $195 down payment, for the sole purpose of identifying the true identity of the caller.

22. Plaintiff provided his Discover credit card number, but locked the card so that the charge for the down payment (and any future payments) would not go through.

23. Plaintiff was then asked for mileage and VIN number, which Plaintiff said he needed a moment to get. "Adarius" disconnected the call shortly after that, around the same time the card was declined, as immediately described below.

24. Plaintiff received an e-mail from Discover Card at approximately 11:37 AM notifying him of an attempted and declined charge from "National Coverage Ctr."

25. At approximately 11:40 AM, Plaintiff received a call back from 878-207-4855, a spoofed Caller ID number that does not go anywhere, which Plaintiff did not answer, but which was "Adarius" calling back. Plaintiff suspects that this call was placed using an Automatic Telephone Dialing System because of the tremendously short time for a call back.

26. At approximately 11:41 AM, Plaintiff received a call from 215-372-0311, another

spoofed Pennsylvania Caller ID number that does not go anywhere, and "Adarius" was on the line after a delay and machine noise connected Plaintiff to "Adarius", which leads Plaintiff to suspect that this call was placed using an Automatic Telephone Dialing System. "Adarius" asked Plaintiff again to provide the VIN number and mileage of the vehicle, and Plaintiff gave "Adarius" the information. After Plaintiff provided this information, "Adarius" informed him that the charge did not go through and that Plaintiff would need to call Discover. Plaintiff informed "Adarius" that he was worried the transaction was fraudulent, so "Adarius" offered to send Plaintiff an e-mail receipt.

27. The e-mail receipt that Plaintiff received came from [info@nationalcoveragecenter.com](mailto:info@nationalcoveragecenter.com), reflected the exact information on the telephone call, and has NCC's address for service of process, 3843 S Bristol St. #478 Santa Ana, CA 92704, at the bottom of the e-mail. Because Plaintiff had identified the caller, Plaintiff disconnected the call.

28. Despite this, Plaintiff received yet another call a few seconds later with the spoofed caller ID 610-268-9802, at 11:45 AM. Plaintiff suspects that this call was placed using an Automatic Telephone Dialing System because of the tremendously short time for a call back, and the fact that he said "Hello" a few times and heard clicking, choppy audio, and machine noise before the call was transferred to "Adarius."  Plaintiff made a request not to be contacted and for a copy of Company's do-not-call policy, which "Adarius" said he would "take care of" and then hung up.

29. Plaintiff received nothing from "Adarius" or Defendants with a do-not-call policy as of the date of this filing.

30.  To the best of Plaintiff's knowledge, none of the Defendants are licensed under any

authority or capacity to sell insurance or vehicle service plans, or authorized to represent that they are calling on behalf of Hyundai or that the plan is in any way authorized by Hyundai or by Hyundai dealers. Upon information and belief, Defendants sell a third-party warranty serviced by Omega Autocare.

31. Because Plaintiff asked to receive Defendants' Do-Not-Call policy and did not, it is evident that Defendants do not maintain such a policy. Likewise, based on this fact, it is clear that Defendants do not have any Do-Not-Call lists or procedures in place. Based on the nature of their illegal activities, Defendants' noncompliance with the law in this regard is unsurprising.

32. Plaintiff received the calls on his private domicile telephone, which is, in addition to being a domicile telephone, a telephone for which he is charged for the calls, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

33. The fact that the first call played an balloon popping sound after multiple times of Plaintiff saying "Hello" and a zipper sound when the offshore agent disconnected from the call after transferring it to NCC, is *bona fide* evidence that the first call was a "robocall" made with the ViciDial Asterisk-based Automatic Telephone Dialing system, as that system uses these characteristic and copyrighted sounds to indicate that an agent has connected and disconnected from the autodialed call that the system automatically dialed and placed.

34. These facts of automatic and seemingly random Caller ID spoofing, rapid callback, machine noise, choppy audio, clicking, the geographic distance between the Plaintiff and the Defendants, as well as the fact that these calls were part of a broad-ranging telemarketing campaign, in the latter three calls, demonstrate that these calls were made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

35. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a… cellular telephone service… or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii). As stated immediately above, the calls were placed using an automatic telephone dialing system to Plaintiff's private domicile telephone line, on which he is charged for the call.

36. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

37. Plaintiff was harmed by the calls. He was temporarily deprived of legitimate use of his phone because his phone line was tied up, it used up his minutes, he wasted energy and stress in answering a call, his telephone batteries and electricity were depleted, he was charged for the calls, and his privacy was improperly invaded. Moreover, the calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

38. Plaintiff adequately confirmed corporate identity for each and every call so as to establish liability of Defendants, as more fully outlined above.

39. These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

40. Plaintiff did not provide any one, more, or all Defendants, nor any agent of Defendants, prior express written consent, or any other form of consent, express or implied, to cause Plaintiff to receive telephone calls on his personal telephone that utilized an "automatic telephone dialing system" or otherwise to transmit a message or make calls.

41. As a point of fact, to the extent that "consent" was supplied during the calls, that was

done in order to discover the identity of the caller and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call."

42. Plaintiff had no prior business relationship with any one, more, or all of Defendants.

43. The telephone Sales Calls therefore violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(c)(3)(F), 47 U.S.C. § 227(e), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47 CFR § 64.1200(a)(1)(iii), 47 CFR § 64.1200(a)(1), and 47 C.F.R. 64.1200(c)(2).

### IV.   Causes Of Action

#### First Cause of Action

(Negligent Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

44. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

45. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

46. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

47. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

48. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

49. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

50. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

51. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

52. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

53. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

54. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

55.  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

56. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

57. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private domicile right of action.

### Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

58. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

59. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private domicile right of action.

### Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

60. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

61. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private domicile right of action.

### Eighth Cause of Action
(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

62. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

63. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private domicile right of action.

### Ninth Cause of Action
(Negligent Violation of the TCPA "Caller ID Spoofing"
Prohibition, 47 U.S.C. § 227 et seq.)

64. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

65. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(e), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Tenth Cause of Action
(Knowing and/or Willful Violation of the TCPA
"Caller ID Spoofing" Prohibition, 47 U.S.C. § 227 et seq.)

66. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

67. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(e), Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

**WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:**

### V.     Prayer for Relief

On Causes of Action 1-10:

1. For awards of $500 for each negligent violation as set forth in actions 1-10;

2. For awards of $1,500 for each knowing/willful violation as set forth in actions 1-10.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages: : **$30,000** (Four counts each of: sales call, ATDS call, failure to put Plaintiff's number on Defendants' Do-Not-Call list, failure to provide Plaintiff a copy of Defendants' Do-Not-Call policy, and caller ID spoofing at $500 per count of each, with treble damages for each.)

4. Punitive damages to punish Defendants for their willful, illegal, and deliberate tortious conduct and to deter others who may otherwise engage in similar willful illegal and deliberate tortious conduct;

5. Prejudgment interest at the maximum legal rate;

6. Costs of suit herein incurred; and

7. All such other and further relief as the Court deems proper.

## VI. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: **July 9, 2018**

/s/ _____
Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com
